CARMINE DELLO RUSSO ET UX. *vs.* MARY CORIDEO.

Third Judicial District, New Haven, January Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

The principle, applied in the interpretation of deeds containing contradictory or uncertain descriptions, that known and fixed monuments will prevail over courses and distances, is not an imperative rule of law, but merely an instrument of construction wherewith to ascertain the always-controlling intention of the grantor; and if the courses and distances yield the more reasonable and logical result where taken in connection with the surrounding circumstances, including the location of the property and its contemplated uses, they will predominate.

Phrases such as "more or less" and "about," when used to qualify statements of quantity or distance in deeds, may properly be held to cure slight and unimportant inaccuracies, thus enabling an adjustment to the imperative demands of fixed monuments, but they can never have the effect of modifying such statements to the point where they are weakened or destroyed, unless such a result is otherwise indicated.

In the present case, the parties derived their respective titles to adjoining lands from a common grantor who, in conveying the northerly or defendant's lot, reserved to himself and the subsequent owners of the southerly or plaintiffs' lot a right of way over the extreme westerly side of the defendant's lot, "said way being fifty feet by fifteen feet, more or less, and at present distinguished and bounded by stone and wood fence." The stone fence, or retaining wall, thus referred to was so irregularly constructed that the space between it and the westerly boundary of the defendant's lot decreased from a width of fifteen feet at its southerly end to a width of little more than two feet at its northerly end. The common grantor never altered the position of this wall as long as he retained the southerly or plaintiffs' lot, but, in order to use the northerly end of the passway for vehicular traffic, trespassed upon the adjacent land of K. After

Russo *v.* Corideo.

the plaintiffs had acquired the southerly lot, K forbade further acts of trespass, and the plaintiffs then brought the present action to establish the width of the passway over the defendant's lot as fifteen feet for its entire length. *Held:*

1. That, under all the circumstances, the distances designated in the reservation of the right of way were intended as the permanent description and to prevail over the monuments referred to therein, which merely marked its temporary course; and that the plaintiffs were, therefore, entitled to a relocation of the retaining wall at its northerly end to permit a full width of fifteen feet.

2. That although the defendant could not be required by mandatory injunction to move the wall, since she was not responsible for its original construction, the plaintiffs were, nevertheless, entitled to an injunction restraining her from interfering with the work of relocation.

Argued January 28th—decided June 30th, 1925.

ACTION for damages for disturbance of the plaintiffs' right of way by the defendant and for a mandatory injunction compelling the removal of encroachments thereon, and for a declaratory judgment fixing the limit and boundary of said way and quieting title thereto, brought to the Superior Court in New Haven County and tried to the court, *Jennings, J.;* judgment for the plaintiffs, and appeal by the defendant. *No error.*

Plaintiffs are the owners of a certain tract of land in Waterbury, adjoining land of the defendant, over which latter land a right of way exists appurtenant to plaintiffs' land lying southeasterly of defendant's land. Claiming impediment and disturbance of this right of way by defendant, plaintiffs brought action as above stated, alleging in their complaint that John W. Gaffney was on August 31st, 1917, the owner of a tract of land in Waterbury lying between West Farm Street and Easton Avenue, and that on that day he conveyed a portion thereof by deed to one Albert, by the following description: "A certain piece of land with dwelling houses thereon standing, situated in said Waterbury on the southeasterly side of Rock Street

or Easton Avenue, so-called, and known as number 76 Easton Avenue, bounded and described as follows: northwesterly forty feet on Rock Street, northeasterly one hundred feet on F. J. Stapleton, southeasterly forty feet on other land of Gaffney, southwesterly one hundred feet on Abraham Kramer, and reserved to himself from and out of the premises so conveyed a right of way over the land conveyed, running easterly in a direct line from Rock Street to the land of said Gaffney, described in paragraph 1, said passway being fifteen feet wide, and distinguished and bounded by stone and wood fences"; that on September 14th, 1917, Albert conveyed this land to the defendant, and in 1923, Gaffney's administrator conveyed to the plaintiffs certain land to the southeasterly of the defendant's tract, together with the rights of passway reserved in the deed from Gaffney to Albert; and that the defendant, or her servants and agents, destroyed the north and northeasterly boundaries of the passway, and built a wall on the same in such manner as to block it and prevent the use and enjoyment thereof by plaintiffs. Relief is claimed of the nature hereinbefore set forth. All of the complaint is put in issue by the answer, except that the fact of the conveyance from Gaffney to Albert is admitted. The trial court finds that the deed from Gaffney to Albert reserved a passway in the following language: "Saving and reserving from and out of the hereby granted premises a right of way over the land running easterly in a direct line from Rock Street to my own land in the rear of the above described piece of property; said way being fifty (50) feet by fifteen (15) feet, more or less, and at present distinguished and bounded by stone and wood fence."

Albert subsequently conveyed to Corideo, subject to the passway reserved by Gaffney in his deed to Albert.

Thus the defendant has title to a piece of property subject to such passway. Gaffney's administrator conveyed to the plaintiffs the property in the rear of the Corideo property, together with all passway rights which Gaffney had in connection with that property. Adjoining the land of the defendant on the west is property formerly owned by one Kramer, and the east line of the Kramer property is the west line of the passway. The property conveyed by Gaffney to the defendant fronting on Easton Avenue was at a much higher elevation than the land retained by Gaffney at the rear. Easton Avenue rises very abruptly as it approaches defendant's property, and is kept in place by a huge retaining wall, which, at the place where it intersects the west line of the defendant, is between ten and twelve feet high. Along the southerly face of this retaining wall at the original level runs a cul-de-sac known as Rock Street, on which abut two or three houses facing the same way as the Corideo house, and which ends against the west line of the Corideo property.

The Easton Avenue retaining wall is continued at a right angle to support land of the defendant, and after running south along the eastern end of Rock Street and on the west line of land of the defendant, a distance of thirty-six feet, makes another angle toward and then through the Corideo property, turns gradually toward the south and, steadily reducing in height, ends at the southern end of the passway referred to. Along the westerly side of the passway are the remains of an old wooden fence, evidently referred to in the deed, roughly marking its course. This retaining wall, for some distance from the Gaffney property toward Easton Avenue, is fifteen feet, more or less, distant from the Kramer property, and marks the easterly line of the passway, but where the passway approaches Rock

Street, the retaining wall comes to a point a little over two feet from the corner of Rock Street and the Kramer property. This retaining wall is in the same location it was at the time when Gaffney conveyed to Albert and Albert to Corideo, as hereinbefore set forth. At the time when Gaffney conveyed to Albert and Albert to Corideo, the only access to the rear lot, which the administrator of Gaffney subsequently conveyed to the plaintiffs, was through the passway hereinbefore mentioned. Access was had through this passway to the rear lot (now owned by the plaintiffs) after the conveyance by Gaffney to Albert and by Albert to Corideo, for trucks and teams as well as for pedestrians. At the Rock Street entrance the traffic passd over the northeastern corner of the Kramer property.

When one of the trucks using this passway jammed the corner of the veranda of the house on the Kramer property, one Stolfi, a successor in title of Kramer, had a surveyor locate his northeast corner and set up a post there which resulted in narrowing the entrance to the passway to two or three feet. There is a discrepancy between the description contained in the deed and the monuments on the ground. The plaintiffs are the owners of other land adjoining the land they purchased from the estate of Gaffney, which land fronts on North Main Street, and over which they have a driveway and a means of ingress and egress from the land purchased from the estate of Gaffney to North Main Street.

The court, with the consent of all parties, visited the premises conveyed by the administrator of Gaffney to the plaintiffs, Rock Street and Easton Avenue, the passway, the Kramer property, and the property conveyed by Gaffney to Albert and Albert to the defendant. From all of the facts and from an inspection of the premises, a passway substantially fifteen feet wide now owned by the plaintiffs over the property of the

defendant is reasonable, convenient and suitable, and such passway was the passway intended to be reserved by Gaffney and was accepted by Albert, the defendant's predecessor in title, when Gaffney conveyed the land now owned by the defendant to Albert, and was the way to which said land was subjected when Albert conveyed to the defendant.

There was not at the time of the conveyance by Gaffney to Albert, nor at any time since then, any way over which access might be had to the rear lot now owned by the plaintiffs from Rock Street or Easton Avenue, except over a passway substantially fifteen feet wide over its entire length from Rock Street to said rear lot over the land conveyed by Gaffney to Albert and now owned by the defendant.

The land acquired by the plaintiffs from the administrator of John W. Gaffney, for its proper and reasonable use, required—from the time when Gaffney conveyed to Albert and Albert to the defendant—and now requires, the establishment, existence, and use of a passway to Rock Street substantially fifteen feet wide from the land of the plaintiffs over the property conveyed by Gaffney to Albert and by Albert to the defendant. The passway reserved by Gaffney and subsequently conveyed to the plaintiffs, and as required by the situation and use of the land of the plaintiffs, is as at present defined by the existing stone and wooden fences, and as shown on defendant's Exhibit 1, made a part of the finding, excepting that at its northern end, it includes and shall include that section of land within the sector of a circle having a radius of fifteen feet, and having for its center the northeasterly corner of the so-called Kramer property—said sector being bounded westerly on Rock Street, northerly and easterly on the land of the defendant, and southerly on the passway as hereinbefore defined.

A sketch of the defendant's tract, with some of the surroundings, reproducing in essentials Exhibit 1 mentioned in the finding, on a reduced scale, follows:

The court denied the plaintiffs' claim for damages and also the prayer for a mandatory injunction, but granted an injunction restraining defendant from interfering with the plaintiffs in tearing down and rebuilding on the new line so much of the retaining wall as was necessary to give them the right of way above defined, as well as removing any other obstruction of the passway. The expense of this work was to be borne by the plaintiffs, who were to carry out the work without unnecessary injury to the defendant, and who, before commencing work, were to file a bond with penalty of $1,000, conditioned for the performance of the work in accordance with the terms of the judgment; and the court further adjudged that the title to the passway should be quieted and settled in accordance with its findings above set forth. From this judgment defendant appealed, stating in different ways that the court erred in holding, upon the facts found, that the way reserved in favor of plaintiffs over defendant's land was substantially fifteen feet in width and extending in the way set forth in the finding, and that the question of its location was not controlled and fixed by the words "and at present distinguished and bounded by stone and wood fence," and in holding that the passway at the point of entrance into Rock Street was more than two or three feet in width.

*Frederick W. Dauch,* for the appellant (defendant).

*Richardson Bronson,* for the appellees (plaintiffs).

KEELER, J. The discussion of the points raised in this case, as the appellant states in his brief, is principally concerned with the construction of the clause in the deed from Gaffney to Albert which describes the passway. A careful consideration of the facts found as

above stated, having reference to the sketch or diagram given in connection therewith, will render unnecessary any extended discussion of the same in the opinion. It is conceded, as it must be by all the parties, that the task before us is to discover the intent of Gaffney in his use of the words in question. At the time of passing title he was the owner of property including both the dominant and servient estates, as they were to come into being. He had a free hand as to easements, to make them of such nature and extent as he chose. His intent is evidenced by the deed which he gave, taken in connection with the property which he sought to convey and the adjoining property on the south, ownership of which he retained. The court has found that previous to the conveyance, he had made use of a passway substantially fifteen feet in width, situated for most of its extent on his own land, but that at its northern end, in view of the high bank walls on the right of the way, he had used land of his abutting neighbor on the west across its corner where this land fronted on Rock Street, and—so far as appears—without objection, from the adjoining owner, but nothing appears of record to show that he had ever acquired any rights therein either by permission, or adversely. He had been using a way of about fifteen feet in width; that was what he wished to continue to enjoy, being ample for both foot and vehicular passage. So long as he could still make use of the Kramer property he had no occasion to remove the obstructions at the farther end of the passway; but when he should no longer be able to pass over the corner of the Kramer land, he quite naturally desired to be safeguarded with a right of way, which could be made passable by the removal and relocation of the bank walls at that point. He had no other way of access to the back land which he retained. To attribute to him an intent to act in the

manner just indicated, is merely to state what any man under similar circumstances would be likely to do. This leads to the principal issue in the case, whether there is anything in the phraseology employed in his deed, which would negative such an intent, or which would compel us to some other conclusion in the way of interpretation of the instrument, since the final rule of interpretation is what he meant by what he said.

It is contended by the appellant that since he used the words "more or less" and used them in connection with the words "and at present distinguished and bounded by stone and wood fence," the extent of the passway is to be determined solely by the situation of the stone wall running in a general southerly direction through the land conveyed by Gaffney, and the situation of the board fence running along the east side of the Kramer property, in other words, that these fences are monuments which control a location ambiguously described in preference to the indicated width of fifteen feet, more or less. The appellant, in support of this claim, relies upon the well-settled rule that in cases of contradictory or uncertain description known and fixed monuments will control courses and distances, and cites a number of Connecticut cases as authority. The case first cited, *Belden* v. *Seymour*, 8 Conn. 19, 25, also gives the principle or reason lying back of the rule: "The least certainty must yield to that which is most certain, if they cannot be reconciled." This last observation marks the rule as one of construction and not of law, not imperative and exclusive, but as an aid in determining the intent of the grantor. If the inflexible application of the rule just noted does not clarify his intent, but yields a result utterly at variance with the manifest reason for the existence of the passway, then it is to be laid aside, if the application of the measurements given yields a reasonable and logical result, taken

in connection with surrounding circumstances, especially the physical condition of the property under consideration, its situation and the uses to which it might be put.

The defendant's claimed construction of the reservation is that having regard to the fact that the dimensions of the passway are stated with the qualification of the words, "more or less," and since the actual measurements show that at the northerly end of the passway it is open to the extent of two or three feet, there is nothing in the reservation which would entitle Gaffney and his successors in title to any greater width of passway at or beyond that point. The words "more or less" in their ordinary use are to be taken in connection with all other features in any given transaction, they are words of caution, denoting some uncertainty in the mind of one using them and a desire not to misrepresent.

"The words 'more or less' and the word 'about,' used in connection with quantity or distances, are words of safety and precaution. They are intended merely to cover some slight or unimportant inaccuracy, and, while enabling an adjustment to the imperative demands of fixed monuments, they do not weaken or destroy the statements of distance and quantity when no other guides are furnished." 1 Jones on Real Property, § 407, p. 337.

To the same effect and in the same words, is 4 Thompson on Real Property, § 3155, p. 255, both citing and practically quoting from the leading case of *Oakes* v. *DeLancey*, 133 N. Y. 227, 30 N. E. 974.

There can be no such margin of tolerance created by the use of these words, as to make them effective or controlling in the definition of a passway exceeding fifteen feet in width at its south end and narrowed down to not more than three feet at the north. Gaffney.

needed and evidently desired a passway for vehicles and pedestrians adequate to the ordinary uses of his back land; now, in view of the fact that he was the owner of the front land and could in conveying it provide for such an adequate easement, we must find something in the deed or surrounding circumstances to negative the idea that he did not succeed in his endeavor. It is clear that he designed to get from the back land to Rock Street, and to provide a proper way so to do. His purpose and intent are stated distinctly in the first clause of the reservation paragraph; he saves and reserves "a right of way running easterly in a direct line from Rock Street to my own land in the rear of the above described property;" he wished to get from his rear property to Rock Street, that is, to have an adequate way running northerly far enough to give him a clear entrance upon the eastern end of the cul-de-sac, which formed a part of the western line of the property which he conveyed to Albert. He needed and evidently strove to reserve a right of way of sufficient width for the purposes above indicated, not one ending in a bottle neck at the north end three feet wide and available only for pedestrians, and not for vehicles larger than a baby's perambulator or a boy's miniature express wagon. How little importance is to be attached to the second clause of this paragraph is made clear when we note that from the scaling of the map, Exhibit 1, of which the sketch hereinbefore given is a reduced reproduction, it appears that the width of the way at its southern end is about eighteen feet, that the distance from the post on the northeast corner of the Kramer land to the point in the stone wall where the latter turns abruptly westward and runs to the line of the end of Rock Street is approximately thirteen feet, while the extent north and south which the Gaffney deed puts at fifty feet is in fact about sixty-eight feet,

and that the way to be effective and adequate would need an addition at the northern end of about eight feet, running northerly, which was approximately the amount added by the judgment of the court. That Gaffney knew that in the use he was making of the passway, whereby he crossed a corner of the Kramer land, he did not use the whole of the way he intended to reserve, and that some readjustment of the way would be called for in the future, is evident by his use of the words *"at present distinguished and bounded* by stone and wood fence."

The foregoing considerations show how little significance can be given to this second clause as regards figures and distances. At best it was only a partial and incomplete boundary of the way in question. The only really significant idea is that of the temporary character of the way therein referred to. It is the first part of the paragraph which is significant and controlling; it reserves a right of way which was required for the proper use of the back land and it tells where it is to begin—at Rock Street—and end—on the rear land. Here we have a degree of certainty, which is not properly to be modified by any measurements or references. Its beginning and end are fixed, and its westerly boundary also, that is, by the fixed monument of the board fence between the property of Gaffney and the Kramer property. This is the first call in the reservation paragraph, and much more certain, material and important than the words in the second clause, forming the second call. The first call should therefore control. *Clark* v. *Beloff,* 71 Conn. 237, 41 Atl. 801. The action of the court in determining the intent and purpose manifested in the deed, and in fixing and defining the location of the passway, was correct. The only other claim of defendant requiring attention is that the plaintiffs were not entitled to an injunction in

the form granted by the court. Plaintffs claimed a mandatory injunction. This was denied by the court, on the ground that the defendant had not created the obstacles to passage over the northern end of the way established and defined by its judgment herein, but therefore since the plaintiffs had a right to clear away such part of the land as was included in the judgment, they had the right so to do without hindrance or molestation from defendant. It is to be noted that in this same judgment the court had quieted the title to the passway and established its boundary and limits. Any interference with the establishment in a shape necessary and proper of a passway over this additional land would be a trespass, and if the court from the evidence had reason to believe that a trespass was threatened, or was likely to occur, its action in restraining such a trespass was lawful and proper. For any damage resulting from the acts of plaintiffs in this regard, the defendant has adequate security in the bond required by the judgment to be given to him by plaintiffs, conditioned for the perfromance of the work in accordance with the judgment.

There is no error.

In this opinion the other judges concurred.