GUISEPPE FERRIGNO ET ALS. *vs.* EMMA H. ODELL,
ADMINISTRATRIX, ET ALS.

First Judicial District, Hartford, May Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 8th—decided July 14th, 1931.

*Kendall M. Pierce,* for the appellants (defendants).

*William D. Shew,* for the appellees (plaintiffs).

HINMAN, J. From the finding, the following facts appear: Prior to February 10th, 1881, The Park Ecclesiastical Society owned a parcel of land on the northwest corner of Asylum and High Streets in the city of Hartford; Charles Blair was the owner of a lot on Asylum Street, with a building thereon, immediately west of the land of the Ecclesiastical Society. The deed under which The Park Ecclesiastical Society acquired this property called for a frontage on Asylum Street of one hundred and four feet and three inches. February 10th, 1881, Blair, by warranty deed, conveyed his property to the Missionary Society of Connecticut. In this deed, the east boundary line is described as running in a straight line from Asylum Street along the face of the water table on the east side of the brick block standing on the land conveyed. It was then discovered that the Blair

building encroached on land of the Ecclesiastical Society, and on March 15th, 1881, the latter executed and delivered to Blair a quitclaim deed, the provisions of which, so far as pertinent to this case, are printed in a footnote. This deed provides that the boundary between the proprietors ". . . shall be a line drawn through a point on Asylum Street, situated one hundred and four feet and three inches, west of the east

"Whereas Charles Blair of Canton has erected a building on his land situated in the City of Hartford bounded South on Asylum Street and East on land of The Park Ecclesiastical Society of Hartford and it having been found that the East wall of said building throughout its entire length is standing on the land of said Society and said Blair having now purchased of said Society the land on which said wall stands. Now therefore,

"KNOW ALL MEN BY THESE PRESENTS, THAT THE PARK ECCLESIASTICAL SOCIETY OF HARTFORD, State of Connecticut, a religious Society duly organized under the laws of the State of Connecticut by its Treasurer Edward M. Bunce who is duly authorized by a vote of said Society, for divers, good causes and considerations thereunto moving especially for the sum of Two Hundred and fifty dollars received in full satisfaction of Charles Blair of Canton in said Connecticut has remised released and forever quit-claimed and does by these presents for itself justly and absolutely remise, release and forever quit-claim unto the said Blair his heirs and assigns forever all such right and title as said Society has or ought to have in or to a certain piece or strip of land about nine inches in width more or less and bounded South on Asylum Street and East on land of said Park Ecclesiastical Society and the depth of said piece is one hundred feet and five and one half inches, from the building line of said Street meaning hereby to convey the land of the said Society on which the East wall of the building of said Blair now stands, so that hereafter the eastern boundary of the land of said Blair and the Western boundary of the land of said Society shall be a line drawn through a point on Asylum Street, situated one hundred and four feet and three inches, West of the East line of the land of said Society, and said dividing line from said point runs Northerly along the East face of the East wall of the said building to a point at the Northeastern corner of said building and distant one hundred feet and five and one half inches from the building line on said Asylum Street. The East line of the land of said Park Ecclesiastical Society runs Northerly on High Street and through a point ten feet East of the southeast corner of the base of tower of church standing on said land of the Society."

line of the land of said Society, and said dividing line from said point runs northerly along the east face of the east wall of the said building to a point at the northeastern corner of said building and distant one hundred feet and five and one half inches from the building line on said Asylum Street." This line then coincided, and still coincides, with the eastern face of the water table of the Blair building, now the property of the defendants. In the wall below the water table is a line of windows three feet in height, which, at the time of the deed, March 15th, 1881, were above the surface of the ground, and the wall shows a batter three inches from the bottom of the water table to the bottom of the windows which was nearly level with the surface of the ground. This condition continued down to the time of the purchase by the plaintiffs. July 8th, 1914, the Missionary Society of Connecticut conveyed the Blair property to Jeremiah D. Odell, using the same description as appeared in the deed from Blair to the Missionary Society. In both these deeds, the property is described as having a frontage on Asylum Street of twenty-seven feet nine and one half inches.

July 15th, 1924, the Ecclesiastical Society conveyed its land to the plaintiffs by a deed in which the frontage on Asylum Street is stated to be one hundred and five and twenty-five one hundredths feet. Some time between that date and July 15th, 1925, when the plaintiffs started to excavate the land preparatory to the erection of a building, they discovered, for the first time, that the foundation of the defendants' building encroached under their land in that the foundation, underground, consisted of a brown stone wall the east side of which was not perpendicular but sloped outward or easterly so that, at a depth of ten feet, the wall extended some twenty to twenty-four inches to the east of the line of the east face of the water table.

The principal and determinative issue, on the trial, was whether the deed from the Ecclesiastical Society to Blair, which we have quoted, included and conveyed the land covered or occupied by the sloping foundation underground, or fixed and established the boundary line as along the face of the water table. The trial court reached the latter conclusion and that the defendants' building encroached upon the plaintiffs' land for a distance of twenty to twenty-four inches. The assignments of error are directed mainly against this conclusion.

The proper construction of the deed is to be arrived at from a consideration of its terms in the light of the situation of the property and the surrounding circumstances. *Luce* v. *Niantic Menhaden Oil & Guano Co.,* 86 Conn. 147, 149, 84 Atl. 521; *Sweeney* v. *Landers, Frary & Clark,* 80 Conn. 575, 578, 69 Atl. 566; *Bartholomew* v. *Muzzy,* 61 Conn. 387, 392, 23 Atl. 604. The description in the deed of the strip conveyed, and especially of the western boundary line thereof, appears to be definite and exact. The deed locates the east line of the grantor's land as running "northerly on High Street and through a point ten feet east of the southeast corner of the base of tower of church" standing on the land; it prescribes that the new boundary between land of grantor and grantee "shall be a line drawn through a point on Asylum Street, situated one hundred and four feet and three inches west of the east line" of the grantor's land, "and said dividing line runs northerly along the east face of the east wall of said building." The trial court finds that the line so described "then coincided and still coincides with the eastern face of the water table of the Blair building, now the property of the defendants."

The strip conveyed is described as "about nine

inches in width more or less." The words "more or less" and "about," used in this connection, " 'are intended . . . to cover some slight or unimportant inaccuracy, and, while enabling an adjustment to the imperative demands of fixed monuments, they do not weaken or destroy the statements of distance and quantity when no other guides are furnished.' " *Russo* v. *Corideo*, 102 Conn. 663, 673, 129 Atl. 849; 1 Jones on Real Property, § 407, p. 337. It is found that the front footage is now very valuable, and it is apparent that the situation and value of the land when the deed was given was such as to render inches as important in relation thereto as larger units of measurement would be when less valuable and important areas were involved. The difference between the specified width of the strip, nine inches, and that claimed by the defendants—twenty-nine to thirty-three inches—exceeds any "margin of tolerance" afforded by the qualifying words. *Russo* v. *Corideo, supra,* p. 673.

The location of the line is described with reference to its distance from the east line of the Ecclesiastical Society's land, now the plaintiffs', and that distance, exactly specified at one hundred and four feet and three inches, is not reconcilable with the line as claimed by the defendants; still less is the frontage on Asylum Street mentioned in the Society's deed (1924) to the plaintiffs as being one hundred and five and twenty-five one hundredths feet.

It is not stated in or inferable from the finding that any of the parties to the deed knew or had reason to know that the foundation, underground, extended easterly beyond that portion of it which was visible—on the contrary, the dimensions of the strip conveyed for the purpose of curing the encroachment discovered in 1881, and the new westerly line described, indicates significantly that the situation which the parties had

in mind and sought to provide for was that, only, which existed as to the visible "wall of the building" as the preamble to the deed states, without taking into account the concealed and apparently unknown further encroachment by the foundation underground.

The only expression in the deed from which an intent or effect other than that indicated by all of the foregoing considerations is or can be claimed is the statement—interposed between the description of the width and length of the strip conveyed and the designation of the location of the new dividing line—"meaning hereby to convey the land of the said Society on which the east wall of the building of said Blair now stands." The question of intent was one of fact for the trial court. *Luce* v. *Niantic Menhaden Oil & Guano Co., supra*, p. 150. We cannot hold the provision last mentioned, if most strongly construed in favor of the defendants, sufficient to render inadmissible or deprive of legal support a finding, from the other terms of the deed and the situation of the property and the surrounding circumstances at the time it was given, that the intent of the parties was to convey and obtain only the land covered by the wall of the building, as distinguished from the invisible extension, beyond it, of the foundation. Nor do we accept as applicable here the statement in *Gear* v. *Barnum*, 37 Conn. 229, 231, that "a deed of land on which a building stands conveys all the land covered by the foundation." There is a marked distinction in facts between that case and this. There the deed conveyed a "building and the land it stands on" without more specific description affecting the question whether the land included that on which stood a veranda and an outside stairway supported by stonework. It was held, logically, that the veranda and stairs and the stonework supporting them were parts of the building

visible and apparent to the parties, and that the deed was intended to cover the land on which they stood.

The conclusion reached by the trial court as to the existence and extent of the encroachment should stand.

The finding is that when the plaintiffs discovered that the foundation encroached under their land they notified the defendants to remove it but the defendants failed and refused to do so. In order to erect their building utilizing the full front footage, the plaintiffs cut away parts of the encroaching foundation and inserted steel beams to bear the weight of the west wall of their building, thus leaving their basement exposed on the west side, in consequence of which it has been flooded with water at times. A proper wall on the west side would prevent this. The trial court based and computed the damage awarded on a finding that the cost of removal of the encroachment and the building of a new exterior wall with its west face on the line, and the restoration of the surface of the building when the wall has been built, would be $4412; to have built such a foundation in the first place, had no encroachment existed, would have cost $903; and the difference between what it will now cost to erect this west wall in its proper position and what it would have cost to have erected it if no such encroachment had existed, is $3509, for which amount judgment was rendered. This method and result is too liberal to the plaintiffs. The rule of damage, where the encroachment is abated, is that the plaintiff may recover all reasonable expenses to which he has been put by reason of the encroachment. *Barnes* v. *Berendes,* 139 Cal. 32, 36, 69 Pac. 491, 72 Pac. 406; *McKnight* v. *Denny,* 198 Pa. St. 323, 47 Atl. 970; 1 Corpus Juris, p. 1210; 4 Sutherland on Damages (4th Ed.) p. 3919. Upon the refusal of the defendants to remove the portion

of the foundation which encroached upon plaintiffs' land the latter might have themselves removed it and recovered the cost as an element of their damage. Instead, they chose to adopt a different method, not including such removal except in small part, and proceeded with the erection of their building to completion. Finding the result of this expedient so chosen unsatisfactory, they claimed, and were awarded, not what it would have cost them to remove the entire encroachment in the first instance, but the expense of removing it under present conditions created by the completion of their building, together with the increase in cost of building the exterior foundation wall, under these conditions, above what it would have cost had the encroachment been absent or first removed, also the cost of restoration of the surface of the building after the wall has now been built. Damages should be limited to the reasonable cost of removing the encroaching stone work, and expenses and detriments properly incident thereto, before or in connection with the erection of the building, instead of under the present conditions above-mentioned.

There is error in the measure and amount of damages; the judgment is set aside as to amount only and the case is remanded to the Superior Court for hearing in and award of damages in accordance with the foregoing.

In this opinion the other judges concurred.