[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to quiet title to a rectangular strip of land measuring 16.4 feet by 130 feet, the ownership of which is claimed by the plaintiff, Carol Banner, and her abutting neighbor to the south, the defendant trustee, Catherine Cellini. See Plaintiff's Exhibit C (a plot plan illustrating the rectangular strip as "Land Claimed By Carol Banner").
 I A
In the first count of her amended complaint, Banner claims to be entitled to a judgment quieting title in the rectangular strip because she holds record title. In the alternative, in the fourth count, Banner claims to be entitled to a judgment quieting title because she and her predecessor in title have adversely possessed the rectangular strip. The second and third counts allege conduct by the defendants that Banner asserts constitutes trespass and continuing trespass, respectively.
 B
In their answer, the defendants deny the material allegations of Banner's amended complaint. The defendants further set forth four special defenses. In the first special defense, the defendants claim that the plaintiff has waived her right to claim ownership in the rectangular strip because she failed to timely assert her claim and she failed to place notice of her claim on the land records, both to the detriment of the defendants. In the second special defense, the defendants claim that the plaintiff should be barred from asserting her claim to ownership by the doctrine of laches because she failed to timely assert her claim and she failed to place notice of her claim on the land records, both to the detriment of the defendants. The third special defense is addressed to the plaintiff's claim that she can tack CT Page 9715 the time her predecessor in title adversely possessed the rectangular strip. The third special defense alleges that the plaintiff's predecessor in title could not adversely possess the rectangular strip because the predecessor in title originally owned the rectangular strip and separated it out of the plaintiff's parcel by deed dated February 19, 1957. In the fourth special defense, the defendants claim that the plaintiff is estopped from claiming ownership in the rectangular strip because during several transactions within the last fifteen years concerning the plaintiff's parcel, the plaintiff used a legal description that did not include the rectangular strip. Therefore, the defendants argue that the plaintiff admitted that she did not own the rectangular strip and affirmed her actual boundary lines as described in her deed.
The plaintiff has denied the defendants' special defenses.
 C
The defendants further filed a six count counterclaim against the plaintiff. In the first count, the defendants claim that the plaintiff was negligent in that she: failed to record her claimed interest as provided by General Statutes § 47-33f; permitted the land records to reflect her boundaries as not including the disputed property; failed to attend public zoning hearings on the defendants' property to assert her claim; and failed to assert her claim until after a house was constructed on the defendants' property and placed on the market for sale. In the second count, the defendants claim that the plaintiff intentionally timed her lawsuit to cause the defendants harm. In the third count, the defendants claim that they relied upon the land records which contained the plaintiff's recorded instruments using a legal description of her property that did not include the rectangular strip. In the fourth count, the defendants make a claim for the reasonable value of the rectangular strip if the plaintiff succeeds in proving her claims and thereby acquires title thereto. In the fifth count, the defendants allege that the plaintiff slandered the title to the defendants' property by causing a notice of lis pendens to be recorded on the land records covering a larger parcel of land than the plaintiff made claim to. In the sixth count, the defendants claim that the plaintiff would be unjustly enriched at the expense of the defendants if the plaintiff prevailed in her claim.
The plaintiff responded to the counterclaim by denying each CT Page 9716 and every allegation.
 II A
"A person who claims title by deed is claiming that he has good record title which entitles him, in an action to quiet title, to a judgment of ownership. . . . Conversely, a person who claims title by adverse possession is claiming that although he does not have record title, his proof of possession which is adverse, open, notorious and continuous for the entire statutory period entitles him, in an action to quiet title, to a judgment of ownership. . . . The trial court must first determine in which party record title lies, and then, if necessary determine whether adverse possession has divested the record owner of his title." (Citations omitted; internal quotation marks omitted.) Konikowskiv. Everson, 42 Conn. App. 658, 659-60, ___ A.2d ___ (1996).
 B
Accordingly, the court will first determine in which party record title lies for the rectangular strip. In some cases. vague descriptions within recorded deeds can cause confusion as to the actual boundaries of adjoining property. Cf. Wildwood Associates,Ltd. v. Esposito, 211 Conn. 36, 47-48, 557 A.2d 1241 (1989). In this case, the various deed descriptions are clear and remarkably accurate, and leave no doubt as to which party owns the rectangular strip by record title.
The plaintiff's deed describes the boundaries of her property as such:
 NORTHERLY: On Ridgeview Avenue, one hundred thirty (130) feet;
 EASTERLY: On Lot No. 49 on map hereinafter referred to, in part, one hundred twenty-five (125) feet, more or less;
 SOUTHERLY: On land of George H. Griffin, being the southerly portion of Lot No. 48, one hundred thirty (130) feet;
WESTERLY: By Home Place, now known as George CT Page 9717 Street, one hundred twenty-five (125) feet, more or less.
Plaintiff's Exhibit A. The evidence before the court demonstrates that the above description does not include the rectangular strip. Indeed, even the surveyor hired by the plaintiff to prepare plaintiff's exhibit C testified that he could not uncover a single recorded document that supported the plaintiff's claim to hold record title to the rectangular strip. See Plaintiff's Exhibit C (where the surveyor indicated on the plot he prepared that he found iron pins in the ground at three corners of the property within inches from their location as described in the deed). Moreover, the evidence establishes that the northern boundary of the defendant Cellini's property, as described in her deed, corresponds to the southern boundary of the plaintiff's property, as described in her deed. Thus, all the pieces of this land puzzle fit harmoniously together.
Notwithstanding this overwhelming documentary and testimonial evidence, the plaintiff still presses her claim that she is record title holder to the rectangular strip. The plaintiff bases this claim upon the "more or less" provisions in the description of her easterly and westerly boundaries. See Plaintiff's Exhibit A. The plaintiff argues that the rectangular strip is provided for in the "more or less" provision in her deed. By this argument, the plaintiff contends that the "more or less" provisions account for an additional 16.4 feet to the eastern and western boundaries, beyond their described quantities of 125 feet. This argument is meritless.
"The words `more or less' in their ordinary use are to be taken in connection with all other features in any given transaction, they are words of caution, denoting some uncertainty in the mind of one using them and a desire not to misrepresent."Russo v. Corideo, 102 Conn. 663, 673, 129 A. 849 (1925). "The words `more or less' and the word `about,' used in connection with quantity or distances, are words of safety and precaution. They are intended merely to cover some slight or unimportant inaccuracy, and, while enabling an adjustment to the imperative demands of fixed monuments, they do not weaken or destroy the statements of distance and quantity when no other guides are furnished." (Internal quotation marks omitted.) Id. The words "more or less" are thus intended to provide a "margin of tolerance." Ferrigno v. Odell, 113 Conn. 420, 425, 155 A. 639
(1931). CT Page 9718
Thus, while it is true that a "more or less" provision within a deed description allows for some elasticity in determining the location of the actual boundaries, it is also clear that the provision cannot be stretched to render meaningless the description itself. In this case, the plaintiff's contention that the "more or less" provision in her deed accounts for an added 16.4 feet to her eastern and western borders, stretches well beyond any "margin of tolerance." Moreover, the evidence demonstrates that the "more or less" provision in the plaintiff's deed was not intended to incorporate such a large differential. Stephen Bombero, a registered land surveyor, practicing for twenty-five years, testified that the phrase "more or less" is a phrase commonly used to indicate that the actual boundary would be within one foot of the described dimension. The evidence bears out Bombero's testimony as the iron pins were found within inches of their described location. There was no evidence presented to the court to suggest that the "more or less" provision in the plaintiff's deed was intended to extend beyond that commonly used by the real estate profession. The court, therefore, accepts Bombero's testimony and finds that the "more or less" provision in the plaintiff's deed would account for a one foot extension, or reduction, to the deed's described property dimension. Indeed, acceptance of the plaintiff's interpretation of the "more or less" provision would render meaningless the deed description, a result this court cannot countenance.
The court concludes that the preponderance of the evidence establishes that the defendant Cellini holds record title to the rectangular strip. Accordingly, the court finds for the defendants as to the plaintiff's claim to be record title holder to the disputed property.
 C
Having found that record title to the rectangular strip lies in the defendant Cellini, the court next addresses the plaintiff's claim that she owns the rectangular strip by adverse possession.
1
"The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an CT Page 9719 open, visible and exclusive possession of the claimant without license or consent of the owner." Roche v. Fairfield, 186 Conn. 490,498, 442 A.2d 911 (1982); Public Storage, Inc. v. EliotStreet Limited Partnership, 20 Conn. App. 380, 384, 567 A.2d 389
(1989); see also General Statutes § 52-575.[1] "`A mistaken belief by the adverse possessor that he owned the property when he entered into possession has been held to be immaterial in an action for title by adverse possession, as long as the other elements of adverse possession have been established.' . . . Clearly, then, specific intent to deprive the true owner of his property is not required." (Citation omitted.) Public Storage,Inc. v. Eliot Street Limited Partnership, supra.
"The doctrine of adverse possession is to be taken strictly;" (Citation omitted; internal quotation marks omitted.) Shulz v.Syvertsen, 219 Conn. 81, 91, 591 A.2d 804 (1991); and must be proven by the claimant by clear and convincing evidence. Oak LeafMarina, Inc. v. Ertel, 23 Conn. App. 91, 93, 579 A.2d 568 (1990). "Clear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the fact in issue in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . The burden is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Brackets omitted; citations omitted; internal quotation marks omitted; footnote omitted.) WildwoodAssociates, Ltd. v. Esposito, supra, 211 Conn. 42. Consistent with this high standard of proof, caselaw condemns "only the use of presumptions to aid the proof of essential elements of a claim of adverse possession, not inferences." Woycik v. Woycik,13 Conn. App. 518, 522, 537 A.2d 541 (1988).[2]
2
The court finds that the following facts have been established by clear and convincing proof. On June 30, 1972, the plaintiff purchased her parcel from the estate of Clarice Griffin. Plaintiff's Exhibit A. The plaintiff's parcel is located in the town of Trumbull, on the northwest corner of a neighborhood block. The northern boundary is along Ridgeview Avenue and the western boundary is along Home Place, aka Home Street, aka George Street.[3] The total area of the neighborhood block is approximately 6 acres. The total area of CT Page 9720 the plaintiff's parcel is approximately .37 acres. See Plaintiff's Exhibit C; Defendants' Exhibit 12.
Upon the plaintiff's parcel is a dwelling and a detached garage. The dwelling and the garage have been on the parcel since at least 1960. The garage faces west toward Home Street and its southern side is approximately 11.4 feet from the actual southern boundary of the plaintiff's parcel as described in her deed. See Plaintiff's Exhibit C. When the plaintiff purchased her parcel, it was the only developed lot on the neighborhood block. Aside from her parcel, testimony establishes that the remainder of the neighborhood block was an unkempt, vacant field until the late 1980s.
According to the testimony of neighbors John Bagley and Robert Bogey,[4] testimony which the defendants did not contradict and which this court has no reason to disbelieve, by 1960, Clarice Griffin was using the disputed rectangular strip of property. Bagley and Bogey testified that by 1961, there was a clothesline that ran from Clarice Griffin's garage to an abandoned telephone pole that was located on the southern boundary of the rectangular strip. See Plaintiff's Exhibit C (illustrating the location of the garage and the abandoned telephone pole). Bagley and Bogey testified that Clarice Griffin put her clothes out on the line weekly.
Thus, by 1972, when the plaintiff purchased her property, there was a clothesline that ran from the garage to the telephone pole on the southern boundary of the rectangular strip. The plaintiff testified that when she purchased her parcel a real estate agent told her that the southern boundary of her property ran to the telephone pole. Therefore, the plaintiff testified that she used the rectangular strip as if it was her own property from July, 1972, to the day the defendants bulldozed the rectangular strip, which occurred sometime after August 2, 1988, as evidenced by plaintiff's exhibit E. That the plaintiff would suffer from the mistaken belief that the rectangular strip was included within her deeded property is understandable considering the clothesline ran from her garage to the telephone pole, and her deeded parcel and the rectangular strip were the only pieces of land being used on the 6 acre neighborhood block. The remainder was a vacant, undeveloped, unkempt field.
Since the plaintiff thought that she owned the rectangular strip, she began using it from the day that she purchased her CT Page 9721 parcel to the day the defendants bulldozed the strip. This was over fifteen years of use. In particular, the plaintiff testified that she planted a sizeable vegetable garden within the rectangular strip; she built an artificial, cement holding pond on the rectangular strip to collect excess water that she directed away from her dwelling and garage; she initially used the clothesline to dry her laundry, and then she used it as a dog run for her german shepherd; she placed a doghouse on the rectangular strip; she planted shrubs along the southern boundary line of the rectangular strip, separating property she believed to be her own from the remainder of the vacant field; and she mowed and maintained the rectangular strip. She also testified that during this fifteen year period, she built a barricade consisting of old tree limbs, like a fence to prevent motorcyclists from coming onto this property.
3
The ultimate question, therefore, is whether the plaintiff's use of the rectangular strip amounted to an open, visible and hostile use of the rectangular strip that would provide notice to the true title owner that the plaintiff was making an adverse claim to the property. The court finds that the plaintiff's use of the rectangular strip was open and hostile to the title record holders. The testimony that was most convincing to the court on this issue was that of the neighbors Bagley and Bogey. Bagley testified that the rectangular strip was wild and overgrown, but the plaintiff cleaned it up and re-landscaped it, putting in flowers and bushes. This, of course, was in direct contrast to the unkempt, overgrown, vacant field that adjoined the rectangular strip. Further, Bogey testified that the plaintiff used the rectangular strip "all the time." Bogey testified that the plaintiff kept the rectangular strip clean and pruned the shrubs that ran along the southern boundary of the rectangular strip. It was clear to the court that because of the plaintiff's use of the rectangular strip, her neighbors viewed the rectangular strip as belonging to the plaintiff. Therefore, any true title owner that cared to view the rectangular strip would have surmised, much as the fabled three bears, that "someone was sitting on their land."[5]
Accordingly, the court finds that the plaintiff has established by clear and convincing proof that she has continuously and exclusively used the rectangular strip for over fifteen years, and that said use was open and hostile to the true CT Page 9722 record title holder. The plaintiff is, therefore, entitled to a judgment quieting title in the plaintiff to the rectangular strip unless the defendants prevail as to any of their special defenses.
 III
In the first and second special defenses, the defendants allege that the plaintiff failed to assert her claim of ownership in a timely manner and, further, failed to place notice of her claim on the land records for the benefit of the defendants and the world. The defendants, therefore, claim that the plaintiff has waived her rights of ownership and/or is barred from asserting her rights by the doctrine of laches.
Through this special defense, the defendants attempt to transfer to an adverse possessor the burden that the law places upon them. "The view is taken that one cannot be an innocent purchaser against a title acquired by adverse possession." 3 Am.Jur.2d, Adverse Possession § 303. "[I]t devolves on a purchaser from the record owner to ascertain whether there has been adverse possession of the property hostile to the record title." Id. Thus, reliance upon the land records cannot act as a shield against an individual claiming the property by adverse possession because the law imposes the burden upon the purchaser to ascertain whether there is any claim to the property adverse to the title record. Id. This view is entirely consistent with adverse possession jurisprudence which demonstrates that an adverse claimant may prevail even though he or she has never placed their claim upon the land records.
Furthermore, it cannot be said that the plaintiff failed to assert her claim in a timely manner. The evidence demonstrates that any attempt by the defendants or other persons to enter upon the rectangular strip was met with opposition by the plaintiff. In fact, the defendants even sent the plaintiff a letter warning her that if she persisted in resisting the defendants' acts of ownership, they would institute legal action. Plaintiff's Exhibit D. The plaintiff responded with a letter of her own, clearly forewarning the defendants that she claimed ownership to the rectangular strip and would take legal action if necessary to protect the property. Plaintiff's Exhibit E. Therefore, it is disingenuous for the defendants to claim that the plaintiff delayed in asserting her claim of ownership. CT Page 9723
The third special defense is related to the issue of tacking. First, for what it is worth, the court finds that the plaintiff failed to prove by clear and convincing proof that her predecessor's use of the rectangular strip was hostile to the title owner. The only evidence on this issue was testimony that Clarice Griffin was using the rectangular strip while her brother-in-law owned the strip. The court could hardly infer from this evidence that her use was hostile and no other evidence was offered on the issue.
The third special defense, however, is moot because the court has determined that the plaintiff has adversely used the rectangular strip for over fifteen years. Therefore, the plaintiff does not need to tack the time and use by her predecessor.
In the fourth special defense, the defendants allege that in the 1980s the plaintiff used a description of her parcel in several financial and real estate transactions that did not include the rectangular strip. The defendants argue that by using said description the plaintiff admitted and reaffirmed her actual boundary lines. The defendants, therefore, argue that the plaintiff should be estopped from her claim of adverse possession as alleged in the amended complaint.
The plaintiff testified, and the court believes, that the plaintiff thought that her deed description included the rectangular strip. Therefore, by using her deed description, the plaintiff was not admitting that she did not own the rectangular strip. Therefore, the court holds that the plaintiff should not be estopped from claiming to have adversely possessed the rectangular strip. Moreover, by these acts it cannot be said that the plaintiff recognized or acknowledged that the defendants owned the rectangular strip. "Although it has been declared that a single act or lisp of acknowledgement by the adverse claimant of the owner's title is fatal to the continuity of claimant's adverse possession, it has also been held that to have such an effect the acknowledgement must be clear and definite, and be accompanied by an intention to interrupt the adverse possession. Also, the property subject to the acknowledgement must be the same as that claimed." 2 C.J.S., Adverse Possession § 183. By using the deed description in the 1980 transactions, there was not a clear and definite acknowledgement of title in the defendants. The plaintiff testified that she had no such intent. Further, the description did not relate to the property claimed. CT Page 9724 Therefore, the court concludes that the plaintiff is not estopped from claiming the rectangular strip by adverse possession.
 IV
As to the defendants' counterclaims, they are inconsistent with the court's findings on the plaintiff's case in chief. Therefore, the court finds for the plaintiff on the defendants' counterclaims.
As to the plaintiff's remaining claims of trespass and continuing trespass, the court finds that the plaintiff failed to prove any tangible damages relating to the trespass. While some vegetation was destroyed, the court received no evidence on the cost to replace the vegetation. Therefore, the court finds for the plaintiff but does not award nominal damages in light of the plaintiff's adverse acquisition of the defendant Cellini's property.
 V
In conclusion, the court finds that the plaintiff has established by clear and convincing proof that she has for over fifteen years continuously and notoriously used the rectangular strip. Further, the defendants have failed to prove any of their special defenses to the plaintiff's adverse possession claim. Accordingly, the court quiets title to the rectangular strip in the plaintiff. The parties are ordered to prepare and record documents on the land records in accordance with this decision.
Grogins, J.