LAWRENCE LOEB ET AL. *v.* AL-MOR CORPORATION

SUPERIOR COURT     JUDICIAL DISTRICT     FILE No. 260019
OF NEW HAVEN

Memorandum filed August 27, 1991

*Mongillo & Insler,* for the plaintiffs.

*Gold, Bernblum & Greenberg,* for the defendant.

SCHALLER, J. This action was brought pursuant to the authority of General Statutes § 47-31 for a judgment settling the title to certain real estate. Both parties claim ownership by record title and by adverse possession.

The defendant does not dispute the plaintiffs' title, ownership and possession of the real estate known as the "Fall Swamp lot." It is agreed that the plaintiffs own that parcel as described in paragraphs two, three and four of both counts of their second amended complaint. The parcel of real estate that is in controversy has been referred to as the "Hubinger property." The plaintiffs claim record ownership by way of deeds alleged in paragraph seven of their second amended complaint. The defendant, as well, asserts a claim of record title. The plaintiffs and the defendant further

claim that they, respectively, have acquired sole and exclusive title to the Hubinger property by adverse possession.

On the basis of a preponderance of the credible evidence, the court finds the following material facts to have been proved: By warranty deed dated January 21, 1954, Raymond L. Smith purchased a parcel of real estate located in Madison from Erna Louise Bremer, Henrietta S. Bremer and Josephine Hathaway. The deed described the property as containing five acres, more or less, and bounded: "Southerly by land of Guilford Lakes Estates, Inc.; Westerly by a highway, known as Twin Bridge Road; Northerly by the remaining land of the Grantors; and Easterly by land of Guilford Lakes Estates, Inc."

By warranty deed dated July 27, 1971, Raymond L. Smith conveyed that property to William G. Sorrentino and Josephine Sorrentino. The description did not specify the acreage. By quitclaim deed dated October 8, 1974, Josephine Sorrentino conveyed the land to the plaintiffs. Again, the description did not disclose the acreage.

The defendant agrees that the plaintiffs received good title to the property that they purchased from Sorrentino, but dispute the location of the northerly and easterly boundaries of the property that separate it from the property of the defendant.

By warranty deed dated September 1, 1954, the defendant purchased its parcel of land located in Madison from Erna Louise Bremer, Henrietta S. Bremer and Josephine Hathaway. The warranty deed described the land as containing 31.5 acres, more or less, bounded: "Southerly by property now or formerly of Raymond L. Smith (being the same property described above); Westerly by the highway known as Twin Bridge Road; Easterly by property now or formerly of Roy and

Evelyn Gesner, and property now or formerly of Fred Loomis, each in part; and Northerly by other land of the Grantors."

The land conveyed to Raymond L. Smith and that conveyed to the defendant by Erna Louise Bremer, Henrietta S. Bremer and Josephine Hathaway represented the first conveyances out of a parcel of land containing seventy-two acres, more or less, devised to Erna Louise Bremer, Henrietta S. Bremer and Josephine Hathaway from the estate of their father, John J. Bremer, also known as Johannes Joachim Bremer, by certificate of devise dated March 15, 1926. The chain of title to that property can be traced back prior to 1855.

For a period of thirty-three years the defendant enjoyed uninterrupted possession and enjoyment of the land that it acquired in 1954, until June, 1987, when the plaintiffs brought this action. At that point the defendant and its predecessors in title had enjoyed uninterrupted possession of the property for some 132 years. During that period, no adjoining owner of land to the east or south, including Josephine Hubinger and Arthur D. Munger, or their predecessors or successors in interest, asserted any claim against any portion of the property based on prior title. The property is abutted on the north and west by highways (Route 80 and Twin Bridge Road).

On or about August 24, 1971, the plaintiffs acquired title to three parcels of land by quitclaim deed from Guilford Properties, Inc., recorded in the Madison land records, volume 139 at page 446. One of the properties was described as the "Fall Swamp lot." The Fall Swamp lot is located to the south of the Smith property and is described in that deed as containing thirty acres, more or less.

On February 27, 1973, the plaintiffs caused a map drawn by Russell Waldo, known as map no. 1862, to be filed in the Madison land records. According to Morris Woodworth, a surveyor employed by Waldo at the time the map was drawn, the map depicted the property known as the Fall Swamp lot. Woodworth claimed that, as shown on the map, the Fall Swamp lot contained sixty-two acres, more or less; the deed, however, describes the acreage as thirty acres, more or less.

The plaintiffs offered numerous deeds in the chain of title to the Fall Swamp lot. In all those deeds, the acreage of the Fall Swamp lot was described as thirty acres, more or less, or as thirty-seven acres, more or less. In the earliest deeds, the Fall Swamp lot was described as two separate parcels, each containing 18.75 acres. The discrepancy between thirty acres, more or less, and sixty-two acres, more or less, is substantial and extraordinary.

In the first map prepared for the plaintiffs after their acquisition of the Fall Swamp lot, the adjoining owners to the north were described as, in part, Sorrentino (from whom the plaintiffs purchased that property), and, in part, the Hathaway estate. Sorrentino was the successor in interest to the Smith property by warranty deed from Raymond Smith, dated July 27, 1971, recorded in volume 139 at page 158 of the Madison land records.

On or about October 8, 1974, the plaintiffs received a deed to the Smith property from Josephine Sorrentino. The deed disclosed the purchase price to be $15,000 but did not specify the acreage. Josephine Sorrentino had acquired title to that property by warranty deed from Raymond Smith. That deed did not mention acreage.

Prior to acquiring the property from Sorrentino, the plaintiffs, on or about March 20, 1973, received a quit-

claim deed from Ward M. Parker, Dudley A. Watrous and Kenneth M. Watrous, purportedly the sole heirs-at-law and next of kin of Arthur D. Munger, of Guilford, transferring property that contained fifteen acres, more or less. That property was referred to during the trial as the "Hubinger-Munger property," or the "Hubinger property," or the "Munger property." The deed disclosed that a conveyance tax of fifty-five cents was paid, indicating a purchase price of $500 or less. The plaintiffs claim that the Smith property, which they purchased from Sorrentino for $15,000, and the southerly-most portion of the defendant's property, lie within the Hubinger-Munger property.

On or about December 27, 1973, the plaintiffs received a quitclaim deed from Joseph J. McGuinness, conservator for Dudley A. Watrous. The conservator's deed disclosed that no conveyance tax was paid.

The plaintiff Lawrence A. Loeb learned of the existence and location of the Hubinger-Munger property from his close friend, the late Joseph McGuinness.

The conservator's application for permission to quitclaim stated that Arthur Munger may have been the owner of fifteen acres, more or less (the Hubinger-Munger property), "except that it does not appear that said premises were ever conveyed by the said Arthur D. Munger, never appeared in the Inventory of his estate and has never been listed or claimed by the trustee under the will of the said Arthur D. Munger. It further appears that the location of said parcel is not readily ascertainable and that any claim to said land could not be established in view of possession by others to lands in the general vicinity."

The application further stated: "Because Lawrence A. Loeb and Allan L. Loeb are the owners and in possession of a certain parcel of land [the Fall Swamp lot] situated in the Town of Madison, County of New

Haven, and State of Connecticut, and wish to clear title to their property which might be clouded by the uncertain claim of Arthur D. Munger, deceased, this is to request the authorization of the Clinton Probate Court to release and quitclaim [the] interest, if any, the said Dudley A. Watrous, Incompetent, may have in the aforesaid premises and he attaches hereto a form of quitclaim for approval by the Probate Court.''

An action was begun in this court by the plaintiffs against Union Trust Company, as executor and/or trustee under the estate of Arthur Munger, seeking to quiet title in the plaintiffs to the land acquired by the plaintiffs from Josephine K. Sorrentino.

On February 13, 1976, judgment was rendered in the case of *Loeb* v. *Union Trust Co.*, Superior Court, judicial district of New Haven, Docket No. 145533 (February 13, 1976), as follows: "The Court further finds that the Plaintiffs acquired title to said premises by deed from Josephine K. Sorrentino, dated October 8, 1974, and recorded in Volume 159 at Page 229 of the Madison Land Records."

The defendant has stipulated that it has no claim against the land that the plaintiffs purchased from Guilford Properties, Inc., as that property is shown and delineated on certain maps, the defendant's exhibits 1 and 2 and the plaintiffs' exhibit A as revised to May 7, 1991.

Michael Morgillo and his brothers grazed cattle and sheep on various parts of the property that the defendant purchased from Erna Louise Bremer, Henrietta S. Bremer and Josephine Hathaway in 1954, as far south as its boundary with the Smith property for a period exceeding twenty years. He and his brothers erected barbed wire fences on the land near the property line of the Smith property and cultivated large portions of the land, as well.

Philip Hathaway, Jr., a son of Josephine Hathaway, one of the predecessors in title of the defendant, spent all of his childhood and many of his adult years on the land owned by his mother, Josephine Hathaway, and his aunts, Erna Louise Bremer and Henrietta S. Bremer, which included the land conveyed to Raymond Smith and the land conveyed to the defendant. Philip Hathaway's family raised cattle and horses and grew potatoes on all of the land now owned by the defendant and all the land referred to as the Smith property to the boundary line with property formerly owned by Guilford Lakes Estates, Inc., and acquired by the plaintiffs from Guilford Properties, Inc. No claim was ever made by any adjoining owner to the south or the east against the land owned at one time by the Hathaway family. By contrast, the plaintiffs failed to establish any substantial or continuous use of that property on their part.

All deeds in the chain of title to the defendant's property were warranty deeds. It is apparent from the descriptions that a dwelling house has existed on the seventy acre parcel since 1855.

All deeds in the chain of title to that parcel describe the owners of the property to the south as Parmelee and then Hubinger and Munger, in part, and the various predecessors in title to Guilford Lakes Estates, Inc., in part.

All deeds to the Hubinger-Munger property describe the adjoining owner to the north to be Newell Norton, or his heirs, and/or Joachim Bremer, or his heirs. All deeds in the chain of title to the property called the Fall Swamp lot describe the owner to the north as Newell Norton, or his heirs, and Johannes Joachim Bremer, or his heirs.

The application filed by Joseph J. McGuinness, as conservator for the estate of Dudley A. Watrous, an

heir of Arthur D. Munger, discloses that the location of the Hubinger-Munger property was uncertain and unknown. The Hubinger-Munger property is located in the northwest corner of the property that the plaintiffs purchased from Guilford Properties, Inc., and has been vacant and uninhabited. The plaintiffs purchased what has been referred to as the Raymond Smith property from Josephine Sorrentino for $15,000.

The essential elements of this action, as recited in § 47-31 of the General Statutes, are that the plaintiffs claim title to the property and that the action is brought against such persons claiming an interest in the property that is adverse to that of the plaintiffs. *Gager* v. *Carlson,* 146 Conn. 288, 289, 150 A.2d 302 (1959); *Gaul* v. *Baker,* 105 Conn. 80, 84, 134 A. 250 (1926); *Foote* v. *Brown,* 78 Conn. 369, 377, 62 A. 667 (1905).

The plaintiffs assert that the defendant may claim estate or interests in either or both of two parcels of land to which the plaintiffs claim title, i.e., (1) the property acquired by the plaintiffs by quitclaim deed from Guilford Properties, Inc., as described in the plaintiffs' exhibit E and referred to throughout the trial as the Fall Swamp lot; and (2) the property acquired by quitclaim deeds from the heirs of Munger, as described in the plaintiffs' exhibits Q and R, and referred to throughout the trial as the Hubinger-Munger property.

The parties agree that the defendant makes no claim against the title that the plaintiffs acquired from Guilford Properties, Inc., to the so-called Fall Swamp lot, as described and delineated in the defendant's exhibits 1 and 2 and the plaintiffs' exhibit A as revised to May 7, 1991.

The parties also agree that the issues before the court are the following: (1) Is the Hubinger-Munger parcel, as the defendant claims, part of the property acquired by the plaintiffs from Guilford Properties, Inc., or, as

the plaintiffs claim, to the north of the property the plaintiffs acquired from Guilford Properties, Inc., and part of the property purchased by the plaintiffs from Josephine Sorrentino, or part of the land owned by the defendant as described in joint exhibit BB? On this issue the court agrees with the defendant's position. (2) What is the location of the northerly and easterly boundary lines of the property purchased by the plaintiffs from Josephine Sorrentino? On this issue, also, the court concludes that the defendant's position is correct. (3) If the Hubinger-Munger property is located as claimed by the defendant, did the plaintiffs acquire title to that property by adverse possession? The court concludes, on the basis of the evidence, that the plaintiffs cannot prevail on this issue.

The plaintiffs have the burden of proving the allegations set forth in their complaint by a fair preponderance of the evidence. The plaintiffs have failed to establish their position on the essential issues raised in both counts. To the contrary, a preponderance of the evidence presented at trial supports the defendant's contentions on all material issues, specifically on the first affirmative defense.

Although the plaintiffs acknowledge that the defendant may claim an interest in the property the plaintiffs acquired from the Munger heirs, the plaintiffs actually assert ownership of property that the defendant acquired in 1954, quiet possession of which was enjoyed by the defendant and its predecessors in title for some 132 years. Lawrence A. Loeb, one of the plaintiffs, was aware that Sorrentino and the defendant occupied land to the north of the property that the plaintiffs purchased from Guilford Properties, Inc., prior to the time when the plaintiffs acquired the quitclaim deeds from the Munger heirs to the so-called Hubinger-Munger property.

To have arrived at the acreage of 62.7 acres, more or less, in the defendant's exhibit 2, the Hubinger-Munger property, containing fifteen acres, more or less, as well as the Fall Swamp lot and other properties must have been included.

The plaintiffs claim that the words "more or less" contained in the description of the acreage of the Fall Swamp lot in the various deeds covered the discrepancy between thirty acres as contained in the deeds and 62.7 acres as indicated on the Clark survey and again on the Waldo survey. The use of the language "more or less," however, has been held to cover only slight discrepancies and irregularities and not substantial discrepancies, especially when the "more or less" is used in connection with an acreage discrepancy. A discrepancy in acreage of that extent is not protected by the "more or less" language. *Ferrigno* v. *Odell,* 113 Conn. 420, 155 A. 639 (1931); *Russo* v. *Corideo,* 102 Conn. 663, 129 A. 849 (1925).

From the date that Arthur D. Munger acquired title to the Hubinger-Munger property in 1915, all of the descriptions in the chain of title to the Fall Swamp lot described that parcel as being bounded on the north by land of Newell Norton and Hubinger or Munger and on the west by land of Hubinger or Munger and a highway (Twin Bridge Road). In addition, all deeds to the Hubinger-Munger property from that date described the Hubinger-Munger property as being bounded, on the north, by land of Newell Norton or his successors in title (the Bremer, Bremer, Hathaway property) and, on the south and east, by the land of various owners of the Fall Swamp lot.

The defendant purchased 31.5 acres, more or less, from Erna Louise Bremer, Henrietta S. Bremer and Josephine Hathaway in September, 1954, receiving a warranty deed. In that deed, the abutting owner to

the south was described as Raymond Smith (who acquired title to his land from the same grantors, Erna Louise Bremer, Henrietta S. Bremer and Josephine Hathaway).

The chain of title to the properties purchased by the defendant and by Smith from Erna Louise Bremer, Henrietta S. Bremer and Josephine Hathaway was traced back to 1855 and earlier by the defendant's witness Chester Lane, a title searcher. All deeds in the chain of title are warranty deeds, except for joint exhibit DD, which was a certificate of devise, dated March 15, 1926, from the estate of John Bremer to Erna Louise Bremer, Henrietta S. Bremer and Josephine Hathaway. The descriptions in each deed in the chain describe the property as containing seventy acres, more or less, and describe the adjoining owners to the south to be, in part, Arthur D. Munger and, in part, the predecessors in title to the Fall Swamp lot.

The deed received by the plaintiffs from their grantor, Guilford Properties, Inc., describes the Fall Swamp lot as containing thirty acres, more or less. No deed in the chain of title to the Fall Swamp lot, dating back to 1835, describes that lot as containing more than thirty-seven acres.

The court concludes that the Hubinger-Munger property lies in the northwest corner of the land shown in the plaintiffs' exhibit A and in the defendant's exhibit 1.

The claim made by the plaintiffs that the title obtained by the defendant in the deed from Erna Louise Bremer, Henrietta S. Bremer and Josephine Hathaway to the defendant was flawed because it erroneously described an adjoining owner is not persuasive. Connecticut courts have held that, if the description in the deed, when read in the light of surrounding circumstances, leaves no doubt of the identity of the land to

be conveyed, the courts will recognize the effectiveness of the deed. *Peck* v. *Lee,* 110 Conn. 374, 375, 148 A. 133 (1930).

The nature and character of the Hubinger property is relevant in determining whether any party has exercised adverse possession of the property. *Tierney* v. *Second Ecclesiastical Society,* 103 Conn. 332, 130 A. 286 (1925). The property is undeveloped, heavily forested, swamp land in large part, replete with wildlife.

The essential elements of adverse possession are the open, visible and exclusive possession by the claimant, without license or consent of the owner, which ousts the owner from possession for a fifteen year period. *Barrs* v. *Zukowski,* 148 Conn. 158, 166, 169 A.2d 23 (1961); *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690, 695, 88 A.2d 379 (1952).

Both parties claim to have satisfied these requirements. The court concludes that the plaintiffs have failed to satisfy their burden of proving adverse possession by a preponderance of the evidence and, thus, cannot prevail on the second count of their complaint.

On the basis of the foregoing, the court concludes that the plaintiffs failed to prove both counts of the complaint while the defendant did establish the first affirmative defense by a preponderance of the evidence. Having proven ownership by record title by virtue of the first affirmative defense, the defendant cannot prevail on the second affirmative defense, which the court finds was not proved, the defendant's user not being adverse.

Judgment settling title may enter as follows: (1) the Hubinger-Munger property acquired by the plaintiffs from the Munger heirs (the plaintiffs' exhibits Q and R) is not located as part and parcel of the land of the defendant acquired from Erna Louise Bremer, Hen-

rietta S. Bremer and Josephine Hathaway (joint exhibit BB), but is located and is part and parcel of the property purchased by the plaintiffs from Guilford Properties, Inc. (the plaintiffs' exhibit E), as delineated on the maps (the defendant's exhibits 1 and 2 and the plaintiffs' exhibit A); (2) the plaintiffs failed to prove their claim of adverse possession as to any part of the land described in the deed to the defendant's property (joint exhibit BB); and (3) the boundary lines of the defendant's property, including the southerly boundary line of the defendant's land as described in joint exhibit BB, and the northerly boundary line of the land purchased by the plaintiffs from Josephine Sorrentino, are as shown on the Schatzlein survey (the defendant's exhibit 3).

In accordance with the parties' stipulation for partial judgment, the motion for partial judgment as to the Fall Swamp lot is granted and judgment entered, accordingly.