[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING RE: APPLICATION FOR TEMPORARY INJUNCTION
This action involves a dispute concerning the ownership interest in a residential condominium unit identified as Unit13-1 in the Declaration of Condominium, and so described in various other documents filed by plaintiff; the documentation further indicates that the residential unit is also known and described as 489 Wolcott Road, Unit 72.
The unit was conveyed to M.E. Richardson by warranty deed dated March 31, 1988.[1] On that date, Mr. Richardson executed a mortgage to the Dime Real Estate Services of Connecticut, Inc. securing a mortgage note in the principle amount of $94,300.[2] Also on March 31, 1988, the Dime Real Estate Services of Connecticut, Inc. assigned its interest in the Richardson mortgage to the Dime Savings Bank of New York, FSB (hereinafter, "Dime-FSB"). On or about August 23, 1993, Dime-FSB commenced an action to foreclose the 3/31/88 Richardson mortgage. The description in the body of the notice of lis pendens identified the property being foreclosed as 489 Wolcott Street, Unit 72, a/k/a Unit 13-1; that instrument also incorporated by reference an attached Schedule A which described the property as: "Unit No. 13-1 in a common interest community known as Southridge Condominiums . . ."
The complaint in the instant action alleges that on December 13, 1993, Dime-FSB obtained a judgment of foreclosure by sale on "the property known as Unit 13-1, 489 Wolcott Street . . ." Further, that a foreclosure sale was conducted CT Page 8637 on February 5, 1994; that Dime-FSB was the successful bidder; and that on March 25, 1994, the sale was approved by the Superior Court (Berger, J.).[3] The committee's deed is dated February 17, 1994, and describes, at one point, the property as "Unit No. 13-1 in a common interest community known as Southridge Condominiums . . . ;" however, the deed also makes reference to the complaint brought by Dime-FSB to foreclose "the premises known as No. 489 Wolcott Road, 72, City of Bristol . . ."[4] It is alleged that the plaintiff, FGB Realty Advisors, Inc., acquired an interest in the residential property "by virtue of a purchase of certain Dime assets . . . and . . by a quit claim deed from [Dime-FSB] . . ." The quit claim from Dime-FSB to plaintiff has attached thereto, and incorporates by reference, the Schedule A description ("Unit 13-1 . . .").[5]
The interest of the defendant Southridge Condominium Association, Inc. in the residential unit is predicated upon a judgment of strict foreclosure it obtained (against Dime-FSB) on September 19, 1994, and Dime-FSB's failure to redeem (law day of 10/31/94, with November 1, 1994 as the day title vested in Southridge if Dime-FSB failed to redeem).
The Southridge foreclosure was commenced on July 11, 1994; the Association sought foreclosure on its statutory lien for common charges due and owing in the amount of $1597.30.[6]
Both the lis pendens and the complaint in the Southridge action identified the property being foreclosed as described in a Schedule A, which was incorporated in both documents by reference; Schedule A set forth the following description: "All that certain real property . . . described as Unit No. 72 in a common interest community known as Southridge Condominiums . . . and as described in the Declaration of Condominium . . . (Declaration) dated May 12, 1987 . . . as amended from time to time, together with the individual common area interest pertaining to the unit." The certificate of foreclosure in the Southridge action, which is dated November 2, 1994, recites that the time limited for redemption under the judgment of strict foreclosure passed and that title to the "said premises" became absolute in the Southridge Condominium Association, Inc. on November 1, 1994; the "said premises" are described in the certificate substantially in the same language as contained in the said Schedule A (annexed to the lis pendens and the complaint): "All that certain real property . . . known and designated as Unit Number 72 in the CT Page 8638 Southridge Condominium . . . as described in the declaration of Southridge Condominium dated May 12, 1987 . . . as amended . . ."
The complaint in the present action is in four counts. The first count is a quiet title action, plaintiff alleging a title interest in the residential unit as a result of the quit claim deed to it from Dime-FSB (recorded 1/25/95), and further alleging that defendant Southridge has "wrongfully claimed an estate in the property adverse to the title of the plaintiff." The second count seeks equitable relief, alleging (1) that the strict foreclosure was "ineffective" because the property was not properly identified in the Southridge foreclosure action, (2) that because the property was misdescribed in that action, the foreclosing court lacked subject matter jurisdiction, and (3) that enforcement of the judgment of strict foreclosure is "unconscionable and/or inequitable" because of the disparity between the value of the property ($77,000) and the amount of the debt/lien ($1597.30). The third count of the complaint alleges that Southridge's wrongful possession of the unit constitutes a conversion of the property. The fourth count alleges a violation of the Connecticut Unfair Trade Practices Act, General Statutes Section 42-110a, et seq., on the basis that "the actions of the Defendant were unscrupulous, immoral, oppressive and/or otherwise unfair, and have caused substantial injury to the Plaintiff." The prayer for relief includes requests for: (1) a declaratory judgment determining that the Southridge judgment of strict foreclosure was unconscionable and should be vacated; (2) a permanent and temporary injunction ordering defendant to deliver to plaintiff the keys to the unit, or to replace the current locks with those removed by defendant; (3) a permanent and temporary injunction restraining defendant from encumbering, assigning, transferring, conveying or leasing the said property, and denying the plaintiff free access to the property; and (4) an injunction commanding defendant to execute and deliver to plaintiff a quit claim deed to the property.
The matter is before the court at this time on just the application for a temporary injunction; temporary relief is requested as per (2) and (3) above, plaintiff maintaining that the defendant Association is in wrongful possession of the residential unit and, if not enjoined, "would take steps to transfer either the putative fee interest or a putative CT Page 8639 leasehold interest in the said property."
"The issuance of an injunction is the exercise of an extraordinary power which rests in the sound discretion of the court, and the justiciable interest which entitles one to seek redress in an action for injunctive relief is at least one founded on the imminence of substantial and irreparable injury." Scoville v. Ronalter, 162 Conn. 67, 74 (1971);Connecticut Assn. of Clinical Laboratories v. Conn. BlueCross, Inc., 31 Conn. Sup. 110, 113 (1973). Our Supreme Court has stated: "[n]ot the applicant only, but the court, must be satisfied that a wrong is about to be done, or an injury is about to be sustained, which, practically, will be irreparable, before resort should be had to this extreme power." Crouchley v. Pambianchi, 152 Conn. 224, 227 (1964). "The remedy by injunction is `summary, peculiar and extraordinary'" and such requested relief "ought not to be issued except for the prevention of great and irreparable mischief." Connecticut Assn. of Clinical Laboratories v.Conn. Blue Cross, Inc., supra at p. 113. The requirements for a temporary injunction are: (1) the establishment of a legal right, that is, the probability or likelihood of plaintiff's ultimate success on the merits of the controversy; (2) the non-existence of an adequate remedy at law; and, (3) the imminence of substantial and irreparable injury to the plaintiff. Id. A temporary injunction is a preliminary judicial order, granted at the outset or during the pendency of an action, forbidding performance of threatened acts until the rights of the parties have been finally determined by the court. Deming v. Bradstreet, 85 Conn. 650, 659 (1912). The purpose of a temporary injunction is to preserve the status quo until a final determination of the parties' rights after a hearing on the merits. "Where an injury is of such a nature that it cannot be adequately compensated in damages, or cannot be measured by any pecuniary standard, it is irreparable," and, "[w]hether damages are to be viewed by a court of equity as `irreparable' or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered." Connecticut Assn. of ClinicalLaboratories v. Conn. Blue Cross, Inc., supra at p. 113-14.
As discussed at some length at the hearing on this application, plaintiff has not demonstrated that it will sustain the irreparable harm. Plaintiff asserts defendant "may attempt to convey, lease, or otherwise encumber the CT Page 8640 subject premises." There is no information before the court that the Association intends to, or is undertaking to, sell, convey, or encumber the property interest, and it has been represented that the premises are already leased to a residential tenant at this time. A lis pendens has been recorded with respect to this action, and any prospective buyer or grantee would be alerted to the pending dispute over title to the unit. There has not been specifically established any imminent threat of irreparable injury. The court recognizes that the function of the temporary injunction is to preserve the status quo; Deming v. Bradstreet, supra; it is also recognized that "[t]he basis for injunctive relief . . . is not past violations but threatened future ones," and that "[a]n injunction may issue to prevent future wrong, although no right has yet been violated." (Emphasis added).Burroughs Wellcome Co. v. Johnson Wholesale Perfume Co.,128 Conn. 596, 605 (1942). However, as stated, a prerequisite for the issuance of an injunction is the demonstration of an imminent threat of irreparable harm, and, since the granting of such relief by a court of equity constitute the exercise of "an extraordinary power," it is to be utilized "only under demanding circumstances," rather than "merely because of the fears or apprehensions of the party applying for it." (Emphasis added). Nicholson v. Connecticut Half-Way House,Inc., 153 Conn. 507, 511 (1966). It is concluded that plaintiff has not demonstrated irreparable injury.
As to prevailing on the merits, a review of the authorities cited, and the documentation presented, indicates that although plaintiff's position appears legally tenable, its factual and legal basis is not as clear-cut as suggested at the hearing. Plaintiff essentially maintains: (1) that defendant's reliance on the certificate of strict foreclosure in the Southridge action, as the basis for its ownership interest, is legally impeachable because the unit was misdescribed in that action; and, (2) defendant was unjustly enriched by the judgment of strict foreclosure as a result of the disparity between the amount of the debt and the appraised value of the property. Regarding (1) above, an examination of the exhibits discloses that a number of relevant documents of record, including the Committee's Deed to plaintiff's predecessor in interest (Dime-FSB), make reference to 489 Wolcott Street, Unit 72; moreover, the Committee's deed to Dime-FSB specifically refers to the complaint in the Dime-FSB foreclosure action as "claiming a foreclosure of a mortgage on CT Page 8641 the premises known as No. 489 Wolcott Road, 72, City of Bristol. Thus, Dime-FSB, at the time it failed to redeem in the Southridge action, was not unaware of the precise property that was the subject of the judgment of strict foreclosure, had not been deprived of notice of the identity of the unit being foreclosed by Southridge, and, in so far as the court can ascertain, was not prejudiced by Southridge's failure to also describe the unit as designated in the Declaration, i.e., "Unit No. 13-1."
General Statutes Sections 47-223 and 47-224, relied upon by plaintiff, concern the description of a unit, with the inclusion of an identifying number, in the content of a declaration creating a common interest community; it is not altogether clear that these statutory provisions would serve to invalidate a judgment of strict foreclosure where the foreclosure action pleadings omitted the identifying number set forth in the declaration, but otherwise accurately described the property being foreclosed with specificity, thereby placing parties to the foreclosure proceeding on notice of the actual unit constituting the subject of the foreclosure action. Both plaintiff and defendant have citedLoeb v. Al-Mor Corporation, 42 Conn. Sup. 279 (1991); there, the court, in the context of an action to quiet title, observed that under Connecticut law, "if the description in the deed, when read in the light of surrounding circumstances, leaves no doubt of the identity of the land . . . courts will recognize the effectiveness of the deed." 42 Conn. Sup. at p. 289-90. On the documentation submitted, it would not seem that the certificate of strict foreclosure (and the pleadings in the Southridge foreclosure action) left doubt regarding the identity of the subject unit, particularly as to Dime-FSB and plaintiff, since the Committee's Deed, and other papers in the foreclosure by sale, referred to 489 Wolcott Rd., Unit 72.
In First Constitution Bank v. Harbor Village Ltd.Partnership, 230 Conn. 807, 819 (1994), dealing with the priority position of a mechanics lien containing an incomplete description, the Court considered the adequacy of notice to the landowner, other lien holders, and prospective lien holders, stating: "In the context of mortgages, we have recognized that `[m]any errors in recording . . . are so neutralized by other matters which do not appear in the record that no searcher after the title could be misled.'" Plaintiff contents, citing Loeb v. Al-Mor Corporation, supra, that the CT Page 8642 description in the Southridge foreclosure action was "insufficient as a matter of law" in that the documents would not provide adequate record notice to a person performing a title search. However, a title searcher, taking back plaintiff's claimed property interest, would determine the plaintiff's grantor to be Dime-FSB, and that Dime-FSB's interest was obtained by virtue of the Committee's Deed, which makes reference to both "Unit No. 13-1" and "No. 489 Wolcott Road, 72, City of Bristol . . ." And, if a title searcher were to abstract defendant's back title to the unit, it would begin with the Certificate of Foreclosure, which refers to "Number 72," and to the title vesting in Southridge as a result of Dime-FSB, identified as the owner of the equity of redemption in the said premises, having failed to redeem; upon granteeing Dime-FSB in the indeces, and/or reviewing the official court records of the Southridge foreclosure action, the searcher would ascertain that Dime-FSB's title derived from the Committee's Deed referring, as stated, to No. 72 and No. 13-1. Thus, while the property description employed in the Southridge foreclosure is not entirely complete, and does lack some degree of clarity, it nevertheless appears unlikely that a title searcher would be mislead. For the reasons stated, therefore, it is indeed questionable that the omission of "Unit 13-1" from the property description would serve to invalidate Southridge's judgment of strict foreclosure.
As defendant has stressed, Connecticut law does not favor upsetting judgments of strict foreclosure. General Statutes Section 49-15 sets forth the basis on which a court may, in its discretion, open a judgment foreclosing the title to real estate by strict foreclosure, stating: "no . . . judgment [by strict foreclosure] shall be opened after title has become absolute in any encumbrancer." Courts have declared that "[o]nce title has passed in a strict foreclosure . . . a final judgment has occurred that cannot be opened." Bank ofStamford v. Alaimo, 31 Conn. App. 1, 8 (1993); Barclays Bankof New York v. Ivler, 20 Conn. App. 163, 166 (1989). However, relief from the operation of a judgment of strict foreclosure may be granted when to enforce it would be against good conscience, or when a party had no opportunity to interpose a defense, or was prevented from doing so by reason of accident, or fraud, and without fault on his part. Hoey v. InvestorsMortgage Guaranty Co., 118 Conn. 226, 230 (1934). See also:Cavallo v. Derby Savings Bank, 188 Conn. 281, 284 (1982). There is no circumstance brought to the attention of this CT Page 8643 court which would indicate that Dime-FSB's failure to redeem was due to the perpetration of fraud, lack of notice, or anything other than its own inaction; to the contrary, there is some indication of a decision on the part of Dime-FSB not to redeem, while fully aware of its law day. "A critical factor to successfully invoking the court's power of equity to grant relief from the enforcement of a strict foreclosure judgment after the passage of the law day is the absence of negligence by [the foreclosed party]." Hoey v. InvestorsMortgage Guaranty Co., supra at p. 230.
Plaintiff also claims entitlement to equitable relief from Southridge's judgment of strict foreclosure under the principle of an unjust enrichment: that the value of the property acquired by defendant under the judgment of strict foreclosure far exceeded the amount of the debt underlying the judgment. Plaintiff cites First Federal Savings and LoanAssoc. of Rochester v. Delmor Condominium Assoc., Inc., 1993 WL 284827, p. 1 (Conn.Super. 1993); the question presented there, acknowledged to be one of first impression in this state, was "whether or not the plaintiff bank [could] prevail in its action for unjust enrichment against the defendant condominium association which acquired absolute title to a property, valued at $24,000 when the association's debt was $2528, as a result of a strict foreclosure in which the plaintiff bank neglected to redeem on its law day." There are significant factual distinctions between the Delmor case and that at bar. Present in Delmor, but not here, were the following: (a) the foreclosed party intended to redeem on its law day; (b) a week before that date, it acted on said intent by sending its check for the proper amount to its attorney; (c) the attorney had notified Delmor's attorney of the client's intent to redeem; (d) the attorney, through inadvertence, failed to deliver the client's check to Delmor on the law day; and, (e) thereafter, when the attorney did seek to correct the mistake, Delmor refused to accept the check. Additionally, it was observed in Delmor that the foreclosing court normally would have ordered a foreclosure by sale because of the disparity between debt and value, but ordered a strict foreclosure based either on representations made at the foreclosure hearing, or in the anticipation the plaintiff would redeem. The court in Delmor concluded that the totality of the facts justified invocation of the unjust enrichment doctrine. CT Page 8644
In the instant case, it was not established that there exists factual circumstances comparable to those in Delmor.
Specific evidence of mistake or unfortunate inadvertence was not presented as a reason for Dime-FSB's failure to redeem. The Delmor Court expressly held that "disparity alone cannot itself be controlling," stating: "[o]therwise, a flood of litigation would follow strict foreclosure judgments." And, the Court also recognized the important public policy implicated with respect to "the finality of title acquired by way of foreclosure, as reflected in [General Statutes] Sec.49-15." In the circumstances of the present case, where, based on the information presented, it seemed that Dime-FSB simply made a decision not to redeem, allowance of recovery on an unjust enrichment theory, based primarily on the disparity between debt and appraised value, would not be consistent with public policy considerations respecting finality, and also, would serve to encourage an increased volume of litigation following judgments of strict foreclosure. In view of plaintiff's reliance on Delmor (a decision of a coordinate trial court), and the factual distinctions between that case and the present one (based on the information presented on this preliminary application), it is not clear that plaintiff has a viable right of recovery on the alleged ground.
For the reason stated herein, plaintiff's application for a temporary injunction is hereby denied.
Mulcahy, J.