[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Beverly Forgione, abused the Bankruptcy Code and the appellate process to enable her to successfully remain in her house, on which she had failed to make any mortgage payments since 1993, for a period of seven years after the defendant, Commercial Credit Corporation ("CCC"), initially commenced a foreclosure action against her. After Mrs. Forgione had exhausted her last procedural delaying tactic, and CCC finally filed a certificate of foreclosure on her house, Mrs. Forgione filed this action. This action restated the same claims which Mrs. Forgione had made on numerous other occasions in this court and United States Bankruptcy Court with one difference, which was particularly pernicious to the interests of CCC. She filed a Third Count, to Quiet Title to the very house to which CCC had finally managed to secure title pursuant to its foreclosure action, and filed a lis pendens on the property, thereby CT Page 16245 effectively preventing CCC from selling it.
Factual and Procedural Background
By her promissory note dated May 29, 1984, Mrs. Forgione promised to pay to the order of Central Bank the principal sum of $52,000 with interest thereon. To secure that promissory note, Mrs. Forgione mortgaged her house at 78 Race Brook Road, Meriden, Connecticut, to Central Bank. By her promissory note dated May 23, 1990 Mrs. Forgione promised to pay to the order of CCC the principal sum of $50,001.49 with interest thereon. She secured this promissory note with a second mortgage on the Race Brook Road premises.
As of December of 1990, Mrs. Forgione was in default under the terms of the promissory note to Central Bank because she had failed to pay the monthly installments of principal and interest. Thereafter, Central Bank exercised its rights under the promissory note to accelerate the amount of indebtedness and commenced an action in the judicial district of New Haven to foreclose its mortgage by complaint dated December 31, 1990.
In June, 1991 Mrs. Forgione filed a voluntary Chapter 13 petition in the United States Bankruptcy Court. In August of 1991, CCC filed a Motion to Modify the Stay in order to commence a foreclosure action against Mrs. Forgione as to the second mortgage on her house. That motion was granted by the Bankruptcy Court.
On September 27, 1991 the first mortgage and promissory note to Central Bank were assigned to CCC for a payment of $59,204.69, which represented principal, interest, taxes, late charges, fees, and attorneys' fees owed by Mrs. Forgione on that note. At that time the promissory note was in default, and the amount of indebtedness had been accelerated.
On March 9, 1992 the Bankruptcy Court, Krechevsky, J., confirmed Mrs. Forgione's Chapter 13 Plan in which she was ordered to make sixty monthly payments of $457 to the Bankruptcy Trustee and make current monthly payments directly to CCC on the first and second mortgage notes and real estate taxes directly to the City of Meriden.[1]
On March 24, 1993 Mrs. Forgione made her last payment to CCC on the first mortgage and on March 30, 1993, she made her last CT Page 16246 payment on the second mortgage. On May 14, 1993 the United States Bankruptcy Court dismissed the Chapter 13 case due to Mrs. Forgione's failure to make the required payments under the Chapter 13 Plan.
On August 4, 1993 CCC commenced an action to foreclose the second mortgage on Mrs. Forgione's residence. Mrs. Forgione filed special defenses and counterclaims to that foreclosure action, which alleged the same claims that she makes in the First and Second Counts of her Complaint in this action. On March 29, 1995, presumably when CCC was about to obtain a foreclosure judgment, Mrs. Forgione filed a Chapter 7 Petition in the United States Bankruptcy Court. Thereafter, CCC obtained a relief from the automatic bankruptcy stay in order to continue the foreclosure action.
On December 20, 1996 this court, Celotto, J. entered a Judgment of Strict Foreclosure against Mrs. Forgione and set a law day of February 3, 1996. Thereafter Mrs. Forgione appealed the Judgment of Strict Foreclosure. CCC moved to dismiss the appeal on the grounds that Mrs. Forgione called no witnesses and produced no evidence in support of her claimed defenses at the time of the hearing on the foreclosure judgment. On April 23, 1997 the Appellate Court granted the Motion to Dismiss the Appeal.
When CCC filed a Motion to Reopen the Foreclosure Judgment for the purpose of setting new law days, Mrs. Forgione filed a Petition for Certification to the Connecticut Supreme Court, thereby again staying the foreclosure action. Her Petition for Certification was denied on June 6, 1997. However, CCC was not able to obtain title to her residence for almost another year because Mrs. Forgione's attorney, F. Woodward Lewis, continued to file baseless motions, including a Petition for Writ of Certiorari to the United States Supreme Court and another Chapter 13 Petition with the United States Bankruptcy Court.
Discussion of Law and Ruling
In the First Count of the Complaint the plaintiff claims that all monies paid to CCC after the Assignment of the Note and Mortgage by Central Bank were misapplied, that CCC unilaterally changed the term of the Note from a 30 year loan to a 16 year 5 month loan, that CCC changed the interest rate of the Note, and failed to pay certain real estate taxes to the City of Meriden. CT Page 16247
At the time of the confirmation of the Chapter 13 Plan in 1992, Mrs. Forgione's two loans from CCC were in arrears in the amount of $14,609.50. The Promissory notes which evidenced both loans had been accelerated, and the entire amount of the principal balance, with accrued interest were due to CCC. All of the plaintiff's claims are based on the erroneous assumption that the interest rate and escrow provisions of the promissory notes as well as their provisions for payment of monthly principal and interest were still in effect at the time of the plan confirmation. They clearly were not. If Mrs. Forgione had complied with the plan, then she could have reinstated her loans, and the foregoing provisions of the notes would again have been in effect. In addition, if CCC's misapplication of her payments caused her to be unable to make the payments due under the Chapter 13 Plan, as she claimed at trial, she could and should have alerted the Bankruptcy Court and the Bankruptcy Trustee so that her Chapter 13 case would not have been dismissed. Her failure to do so only underscores that her real purpose in filing the Chapter 13 Petition and in making the claims against CCC was to delay the foreclosure of her residence.
Mrs. Forgione was obliged to make sixty payments to the Trustee under the terms of the Chapter 13 Plan. But she admitted that she failed to make the required payments and the evidence showed that she made only about fifteen of the total of sixty payments due. The gravamen of all of the plaintiff's claims is that she overpaid CCC. However, the evidence was undisputed that when the Chapter 13 was dismissed, Mrs. Forgione's debts to CCC were still substantially in arrears. At that time the principal, interest and other amounts owed pursuant to the terms of the notes were due and payable, and CCC was under no order to accept anything less than the full payment of both debts. See 11 U.S.C. § 349,1307.
Mrs. Forgione's breach of contract claim is based on the assumption that the notes to CCC had not been accelerated and that she was current on all her payments in 1993. There was simply no evidence to support that assumption. Therefore, judgment may enter in favor of the defendant CCC on the First Count of the Complaint.
In Count Two of the Complaint, the plaintiff has alleged that CCC committed acts of conversion and violations of the state and federal Truth-in-Lending Acts, which in turn constitute a CT Page 16248 violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§ 42-110b et seq. ("CUTPA"). Since there was no credible evidence that CCC misapplied any payments made to it by Mrs. Forgione, and it is clear that Mrs. Forgione owed CCC much more than she paid to it, there is absolutely no evidence of conversion.
The plaintiff presented absolutely no evidence that CCC violated state and federal Truth-in-Lending Acts. The plaintiff's CUTPA claim fails because she failed to prove the breach of contract, conversion, and Truth-in-Lending violations on which that claim was based.
For the foregoing reasons, judgment may enter in favor of the defendant on the Second Count.
The Third Count of the Complaint alleges that the transfer of title to CCC was defective because the plaintiff validly rescinded the note and mortgage based on CCC's alleged Truth-in-Lending violations. The plaintiff's rescission claim is patently ridiculous. Several years after she was in default under the terms of her first note and mortgage, her attorney sent a letter to CCC in which he announced that the note was rescinded. Not surprisingly, he did not return the money owed by Mrs. Forgione to CCC. A condition precedent to rescission is the offer to restore the other party to its former condition as nearly as possible. Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 298-99,478 A.2d 257 (1984).
In an action to quiet title, the prevailing party must prove its title or interest in the disputed property by a preponderance of the evidence. Loeb v. Al-Mor Corp. , 42 Conn. Sup. 279,615 A.2d 182 (1991), aff'd, 224 Conn. 6, 615 A.2d 149 (1992). CCC having (finally) obtained certificate of foreclosure pursuant to a judgment of this court, there was absolutely no evidence that Mrs. Forgione had any interest in the disputed property. At the time of trial this court entered judgment against Mrs. Forgione on this Third Count and ordered that she immediately release the lis pendens which she maliciously placed on the premises at 78 Race Brook Road in Meriden.
The defendant CCC has filed three Counterclaims, one for unjust enrichment, one for reimbursement, and one for slander of title pursuant to Connecticut General Statutes § 47-33j, which provides: CT Page 16249
 No person may use the privilege of recording notices under sections 47-33f and 47-33g for the purpose of slandering the title to land. In any action brought for the purpose of quieting title to land, if the court finds that any person has recorded a claim for that purpose only, the court shall award the plaintiff all the costs of the action, including such attorneys' fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting the claim shall pay to the plaintiff all damages the plaintiff may have sustained as the result of such notice of claim having been so recorded.
The evidence presented by the plaintiff was sufficient to permit the court to find that the plaintiff was unjustly enriched in that she lived in her 78 Race Brook Road Residence rent free at the expense of CCC for approximately five years. The court also finds that CCC is entitled to reimbursement for the fees and expenses it incurred in responding to the many unconscionable delaying tactics of the plaintiff. However, CCC presented no evidence which would permit the court to quantify the amount of CCC's damages on either the First Count (Unjust Enrichment) or the Second Count (Reimbursement) of the Counterclaim. Therefore, judgment may enter on those counts in favor of CCC in the amount of $1.
The court had sufficient evidence to find that the plaintiff had violated § 47-33j by filing the lis pendens on her former residence. At the time of trial the defendant did not present any evidence which would permit the court to quantify its damages suffered due to Mrs. Forgione' s slander of title and merely requested an order that Mrs. Forgione immediately remove the lis pendens from the land records. Judgment may enter in favor of CCC on the Third Count of the Counterclaim with the relief granted being the order, previously entered, that Mrs. Forgione release the lis pendens.
By the court,
Aurigemma, J.